# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAWRENCE KENNETH ALLEN, II, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RWT-10-2192 |
| MAJID ARNAOUT, MD, *et al.*, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Pending are Defendants' Motions for Summary Judgment.[1] ECF No. 5 and 6. Plaintiff was provided with an opportunity to file a response to the motions, but has not filed anything further. ECF No. 9. For the reasons that follow, the motions shall be granted.

## Background

Plaintiff suffers from Multiple Sclerosis (MS). He claims that on August 3, 2010, Dr. Arnaout asked security staff to bring him to the medical room to address his complaints of chronic pain. ECF No. 1 at p. 4. Plaintiff claims he tried to explain to security staff that he had pending litigation against Dr. Arnaout and that pain management and physical therapy were being addressed by Stephen D. Ryan, per medical director Hubert Mickel, M.D. *Id.* Plaintiff claims that Dr. Arnaout began screaming at him:

> Nigger your (sic) an inmate in a maximum security prison, no one cares what I do to you! I have a team of lawyers and can tell them anything, and the courts don't care, they put you in here, now! As far as pain management I'm (not) giving you anything for pain because I don't believe you have MS and that's why I have decided not to administer you MS injections either. And like I told you, I'm cancelling physical therapy,

---

[1] Defendants' Responses to Show Cause have been construed as Motions for Summary Judgment. ECF No. 9.

because you can crawl like the black animal you are.

*Id.* Plaintiff further claims that when security staff asked Arnaout about physical therapist Stephen D. Ryan, Arnaout stated:

> This Stephen D. Ryan is not a doctor, I am, and I say this nigger is not in need of [a] cane, wheelchair (or) anything. What this nigger needs is to stop complaining before he gets found in the woods swing (sic) on a tree by a rope.

*Id.*

Plaintiff claims he asked the security staff to "please" get him out of the medical room because he was still suffering injuries from an assault on "August 22, 2010 in the same place the other day." *Id.* He alleges Arnaout heard him talking to security staff and told him, "I can do anything I want to you because I don't like niggers." Plaintiff claims Arnaout went on to say that if "you no good stinken (sic) filthy niggers were in my country you would (not) get medical care." *Id.* When Plaintiff again asked security staff to remove him from the area, he claims Arnaout grabbed his face and turned his head around, saying he had not finished talking to Plaintiff. *Id.* Plaintiff states that when Arnaout grabbed his face he flinched, prompting Officer Murray to pepper spray Plaintiff. He was then thrown off the stool he was sitting on, beaten, stomped, spit on and dragged to a holding cell. *Id.* He claims during the assault, he lost control of his bowels and bladder and experienced an extreme MS-related muscle spasm. Plaintiff claims he tried to yell that he could not breathe and Officer Kalbaugh told the other officers to let him get some air. The three officers then allegedly threatened Plaintiff that if he kept complaining he would be beaten worse. Plaintiff claims he was then left in the holding cell in his own feces and urine, bleeding from the side of his ear. Plaintiff states that Officer Robertson told him it was no use filing an administrative complaint about

the incident since no one would believe "a scumbag inmate" over the word of the officers and Dr. Arnaout. *Id.*

Defendants Murray, Robertson, and Kalbaugh, the officers who allegedly assaulted Plaintiff, claim the events described by Plaintiff never took place. ECF No. 5. Murray states under oath that he has never used pepper spray on any inmate and that he never otherwise assaulted Plaintiff. *Id.* at Ex. 1. There is no Serious Incident Report, Use of Force Report, or Adjustment Report indicating that force was used against Plaintiff. *Id.* at Ex. 2. Defendants also state that Plaintiff was transferred to North Branch Correctional Institution on August 10, 2009 and has filed 94 administrative remedy complaints as of September 8, 2010, none of which concern the allegations raised in the instant complaint. *Id.* at Ex. 4. Additionally, Defendants point out that Plaintiff's complaint contains a discrepancy with regard to dates; he claims he was still suffering injuries from August 22, 2010 at the time of the alleged assault, but the events described allegedly occurred before that date. ECF No. 5 at 2. Plaintiff has not refuted Defendants' denials.

Defendants Getachew and Arnaout also deny the allegations raised in the Complaint. ECF No. 6. In addition, Arnaout provides a statement under oath stating that he has never used racial slurs to refer to any inmate, nor has he addressed Plaintiff in the manner described. *Id.* Ex. A. He explains that Plaintiff suffers from MS and receives Copaxone injections to prevent harmful MS cells from developing and to stimulate the production of beneficial cells in his body. *Id.* He further states he has no intention of discontinuing the medication, even though Plaintiff refused to take the medication on several occasions. *Id.*

Arnaout further avers that concerted efforts have been made to find an effective medication to control Plaintiff's chronic pain which is suspected to be caused by

3

osteoarthritis.  *Id.*  Those efforts, however, are complicated by Plaintiff's lack of cooperation and belligerent attitude.  Plaintiff frequently refers to medical staff as "a bunch of racist, trailer trash hillbillies" and refers to one medical staff member as a "queer" and "a racist, homosexual bigot."  In addition, Plaintiff threatens violence in order to receive attention and to provoke assaults by staff.  *Id.* Ex. B.

On July 22, 2010, Plaintiff complained to medical staff that he was experiencing severe pain all over his body.  *Id.* Ex. A.  However, because Plaintiff was not exhibiting signs that he was in pain, Arnaout did not recommend pain medication on that occasion and wrote in Plaintiff's chart that acetaminophen would be discontinued.  *Id.*  Despite that notation, Plaintiff's prescription for acetaminophen was continued, meaning that Plaintiff could request it at any time.  Throughout the months of July and August, 2010, Plaintiff did not take any acetaminophen.  *Id.,* Ex. B.

When Plaintiff was evaluated on September 1, 2010, he requested Ultram (tramadol) and when that was denied he requested Toradol (ketorolac).  Arnaout states that Plaintiff's pain is likely due to osteoarthritis, which is not treated by either of the drugs Plaintiff requested.  *Id.* Ex. A.  In an attempt to address Plaintiff's pain, Arnaout added Naprosyn to Plaintiff's medication regimen.  *Id.*  When the nurses tried to give Plaintiff 30 tablets of Naprosyn to keep in his cell so he could take them as needed, he refused them.  *Id.*

Arnaout states that Plaintiff received physical therapy "for a long time," but was discharged from the program by the PT department on July 13, 2010 due to behavioral problems.  *Id.* Ex. A.  Arnaout denies canceling Plaintiff's PT and states that it is his understanding that Plaintiff will be allowed to re-enroll in the program if he cooperates with the therapists.  *Id.*

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In correspondence to the Court, Plaintiff states that this case is about racism, and expresses his belief that he will die in prison because no one cares what is done to him. ECF Nos. 7, 8. Plaintiff was given an opportunity to rebut the evidence presented by Defendants but failed to do so. The Court is sympathetic to Plaintiff's serious medical condition and any pain it may cause. The Court has little doubt that Plaintiff is genuinely frustrated by the limited relief provided by available medications. His physical suffering does not, however, excuse his abusive behavior. The is not the first case in which Plaintiff has made outrageous allegations against medical and correctional staff that, upon further investigation, appear to be pure fabrication. With respect to the instant Complaint, there is no evidence that the events described by Plaintiff ever happened, and therefore the allegations appear to be malicious. The undisputed evidence establishes that the only thing preventing Plaintiff from receiving proper medical care is his uncooperative, belligerent behavior. In addition, there is no evidence that Plaintiff was assaulted by correctional staff or subjected to any use of force. Defendants are, therefore, entitled to judgment in their favor.

Plaintiff is forewarned that complaints of a similar nature filed by him after the date of this decision will be subject to dismissal if it becomes apparent that he has again falsely accused staff of outrageous behavior. In that event, the case will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Plaintiff will then be issued a "strike" pursuant to 28 U.S.C. § 1915(g) and will not be granted *in forma pauperis* status if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court

---

[2] 28 U.S.C. §1915(e)(2) provides that a case "shall be dismissed at any time if the court determines that '(A) the allegation of poverty is untrue; or (B) the action or appeal— (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." A separate Order follows.

<u>March 9, 2011</u>           _____/s/_____
Date           ROGER W. TITUS
         UNITED STATES DISTRICT JUDGE